## Jefferson County ex rel. Grauman v. Jefferson County Fiscal Court et al.

(Decided June 10, 1938.)

LAWRENCE S. GRAUMAN and ROBERT L. SLOSS, Assistant County Attorney, for appellants.

EDWARD C. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The General Assembly of the Commonwealth of Kentucky at its regular 1938 session enacted House Bill No. 129, known as the "Alcoholic Beverage Control Act," and which has not yet been printed in book form as the official acts of that session, Kentucky Statutes Supplement 1938, section 2554b-97 et seq. The act is a comprehensive one and is divided into "Titles" with the titles subdivided into "articles"; but the sectionizing of the act is consecutive throughout. The first title is devoted to Definitions; the second one to Administration of the act; the third one to Licenses and License Taxes; the fourth one to Prohibitions, Restrictions and Regulations; the fifth one to Penalties; the sixth one to Malt Beverage Traffic, and the seventh one to Miscellaneous Provisions. None of the titles have any material bearing upon the question involved in this case except the first three—and only section 16 of Article 1 of Title 3 has direct bearing upon it.

Article 1 of Title 2 creates the state machinery for putting into execution the provisions of the act throughout the commonwealth. That duty is primarily vested in the Department of Revenue. The state commissioner of revenue is given the authority to appoint two state administrators—one having charge of the licensing of dealers in distilled spirits and wines within the commonwealth, and the other one having like charge of malt beverages within the commonwealth. The salaries of the two state administrators is to be fixed by the commissioner of revenue. The state administrators have certain duties to perform, consisting mainly of such as may be delegated to them by the state commissioner of revenue, and each of them is vested with the authority to issue or to refuse to issue licenses for trafficing in the two respective classes of alcoholic beverages within their respective jurisdictions. Section 7 of the act, Kentucky Statutes Supplement 1938, section 2554b-103, makes the State Tax Commission an Alcoholic Beverage Control Board with certain functions enumerated in following provisions of that section, among which is:

"To limit in its sound discretion the number of licenses of each kind or class to be issued in this Commonwealth or within any political subdivision thereof, and to restrict the locations of licensed premises."

Section 8 of the Act, Kentucky Statutes Supplement 1938, section 2554b-104, says:

"The Commissioner [of Revenue], subject to the provisions of Section 4618-90 (Reorganization Bill) of Carroll's Kentucky Statutes, 1936 edition, may appoint and remove such employees and assistants as may be necessary, and shall fix their compensation within the budget appropriation therefor."

Section 9 of the act, Kentucky Statutes Supplement 1938, section 2554b-105, confers police power on the state administrators and certain classes of state appointees under them and so made by the commissioner of revenue pursuant to authority conferred upon him by section 8 of the act.

Section 14 of the act is the beginning of Article 2 of its Title 2 and it relates to "Local Control Authorities."

The only local feature of the act with which this case is concerned is that conferred upon each county; provided its fiscal court sees proper to prescribe a county license for the privilege of retailing alcoholic beverages within the confines of the county and within the limits prescribed therein. It makes the county judge of the county the "County Alcoholic Beverage Administrator" for the county, but it expressly prescribes that, "he shall serve without salary save the salary to which he is entitled as county judge." Provision is made for the appointment of such county administrator when the county judge for any reason fails to act as such, but none of which latter provisions are involved in this case. Another provision in section 14 of the act, Kentucky Statutes Supplement 1938, section 2554b-110, says:

"The functions, powers and duties of each County Administrator shall be the same, with respect to local licenses and regulations, as the functions, powers and duties of State Alcoholic Beverage Control Board, with respect to State licenses and regulations, except that no rule or regulation adopted by any County Administrator may be less stringent than the provisions set up in this Act or than those set up in the rules and regulations of the State Board, and no rule or regulation of a County Administrator shall become effective until approved by the State Board."

Still another provision of the same section provides that the jurisdiction of the county administrator, where one is required, shall not embrace any portion of a city wherein a city administrator may be installed under provisions of section 15 of the same Article, Kentucky Statutes Supplement 1938, section 2554b-111, but that the jurisdiction of the county administrator in such cases shall embrace only the part of the county lying outside of such city limits.

Under the provisions of section 14 of the act the county judge of Jefferson county assumed the functions of county alcoholic beverage administrator for that county, and he proposed, as such administrator, to appoint inspectors, assistants and clerical help to aid him in the performance of his duties as such county administrator. Whereupon the fiscal court of the county made an appropriation out of the county funds to pay for such assistants and clerical hire. From the order making that appropriation the county attorney of the county, Hon. Lawrence S. Grauman, appealed to the Jefferson circuit court, on the ground that there was no authority conferred upon the county administrator under the alcoholic control act to appoint any such assistants or clerical hire. He therefore contended that the appropriation made by the fiscal court of Jefferson county to pay for such assistants and clerical hire was without authority—either express or implied—and, therefore, void. The learned judge of the circuit court took a contrary view and—following the admission of counsel for both sides—he found no express provision in the alcoholic control act for the appointment of such local officers or clerical hire by a county administrator in counties issuing local licenses for retail dealers in alcoholic liquors within the county whensoever its fiscal court sees proper to exercise the authority of levying such a local license tax. However, he concluded that, since section 14 of the act imposed the same duties on county administrators "with respect to local licenses and regulations," as did other parts of the act imposed on the State Alcoholic Beverage Control Board with reference to state licenses and regulations; and, inasmuch as section 8, supra, of the act authorized the appointment of employees and assistants by the commissioner of revenue, the county administrator, where there is one, was thereby given like appointive power. Having reached that conclusion he dismissed the appeal

of the county attorney and thereby upheld the appropriation order made by the Jefferson county fiscal court. By so doing he overruled all of the contentions made by the county attorney and the latter prosecuted this appeal from that judgment.

Counsel for appellees readily admit in their brief filed in this court that there exists nowhere in the alcoholic control act any express authority for the appointment of assistants and clerical help by a county administrator who might be called upon to function under the provisions of the act. As a consequence, he likewise admits that if any such authority exists at all it must be interpreted implied authority from other provisions of the act. In attempting to sustain the judgment appealed from the same attorney seeks to glean authority for the making of such appointments by the county administrator from the provisions of section 8, supra, of the act conferring authority on the commissioner of revenue to appoint assistants and employees in administering the state regulatory provisions of the act. Learned counsel then seeks to parallel the functions of the county administrator locally with those exercised by the State Alcoholic Beverage Control Board as is prescribed by section 14 of the act; but it will be observed that the State Alcoholic Beverage Control Board is not given—by section 8 of the act, or any provision contained in it—any authority to appoint employees or assistants in the entire state administration of the act, since that power, we repeat, is expressly lodged in the "Commissioner of Revenue," an entirely different functionary. Therefore, no such analogous appointing authority may be gleaned from any other express provision of the act, and if the county administrator—where one is called upon to function under the provisions of the act—possesses any such authority, it must be implied from other provisions of the act than the ones referred to and relied on by counsel for appellees.

An effort is made to create such implied authority (i. e., distinct and separate from analogous authority conferred upon the state commissioner of revenue with reference to the appointment of state assistants and employees) from what counsel designates as the "necessities of the case," in order to permit the county administrator to properly discharge his duties and

functions as such local officer or administrator—it being argued that they are so burdensome that he could not perform them alone in person. He cites as the chief case supporting that contention our opinion in the case of Commonwealth ex rel. v. Fayette County, 239 Ky. 485, 39 S. W. (2d) 962. In that case the fiscal court of Fayette county had made an appropriation for the purchase and operation of a county fire truck, primarily for the protection of the county's public buildings from destruction or damage by fire. In construing the general language found in section 1840 of our statutes, we upheld the appropriation as being embraced within the general authority conferring language of that section; but we said in the opinion that each case involving questions of implied authority would depend upon its own facts. We furthermore repeated in that opinion the oft-declared text and judicial expression that (page 963) "As a county is a quasi corporation and a governmental agency of the state, with no independent sovereignty, it possesses only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted."

We furthermore in that opinion approved the rule that courts, in declaring implied authority to local governmental agencies—deriving their authority from constitutions or statutes—should "act cautiously and hesitate to grant or approve it [implied authority], unless the implied power and authority is found to be a clearly necessary means for, and reasonably adapted to, the exercise, execution, and carrying out of the express authority conferred," etc.

Such limitations and restrictions upon the creation of implied authority to such local governmental agencies—including counties—have constantly been observed and strictly applied by this court in a long and unbroken line of opinions, some of the latest of which are Jefferson County v. Peter, 127 Ky. 453, 454, 105 S. W. 887, 32 Ky. Law Rep. 374; Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S. W. (2d) 271; Taylor v. Scoville, 252 Ky. 809, 68 S. W. (2d) 423; Jefferson County ex rel. v. Jefferson County Fiscal Court, 269 Ky. 444, 107 S. W. (2d) 320; Jefferson County v. Jefferson County Fiscal Court, 269 Ky. 535, 108 S. W. (2d) 181; Jefferson County ex rel. v. Jefferson County Fiscal Court, 269 Ky. 768, 108 S. W. (2d) 810, and

numerous other cases cited in those opinions. In the case of Commonwealth v. Nunnelley, 211 Ky. 409, 277 S. W. 506, we expressly denied the right of the county to pay for the use of a post-office box out of the county treasury, which it attempted to do under supposed implied authority under section 1840, supra, of our statutes. Also, in the case of Hollis v. Weissinger, County Judge, 142 Ky. 129, 134 S. W. 176, authority to purchase an automobile for a committee of the county court was denied—it being attempted to be exercised under a supposed implied authority.

In maintaining the safeguards against improper expenditures of tax gathered funds of local governmental divisions of the state, including counties, we held in the case of Ray v. Woodruff, 168 Ky. 563, 182 S. W. 662, that an appropriation by the county of $50 per month for the payment of an extra clerk for the juvenile court was unauthorized under supposed implied authority therefor. In the case supra, Jefferson County v. Jefferson County Fiscal Court, reported in 269 Ky. 535, 108 S. W. (2d) 181—in strengthening our safeguarding position relating to improper expenditures of public funds by such local units of government—we said, inter alia (page 183):

" 'Implied restraints, as well as implied powers, must be respected. Powers not conferred are just as plainly prohibited as though expressly forbidden, and when powers are conferred to be exercised in a specified manner, there is an implied restriction upon the exercise of that power in excess of the grant, or in a manner different from that permitted. Every positive direction to a subordinate tribunal contains an implication against everything contrary to it, or which would tend to frustrate or disappoint the purpose of such direction.' Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S. W. (2d) 271, 273. By this rule the case must be adjudged."

Following such well settled rules of interpretation we discover that the alcoholic control act expressly provides for no additional compensation whatever to the county administrator for functioning as such. The legislature, therefore, concluded that the ex officio duties so cast upon him were not so burdensome as to require additional compensation be paid to him. Furthermore, we have searched the entire alcoholic control act in vain

to find the imposition of any detective or inspection duties on the county administrator. They are either judicial or quasi judicial—performed in the administration of the provisions of the act within the county when its fiscal court sees proper to exercise the licensing authority thereby conferred—and which relates only to retail dealers and has nothing to do with wholesale dealers, manufacturers, or others engaged in the handling in any other manner of such commodities. The performance of none of them require the leaving of his office, although the enforcement of the observance of the law by such county licensees might be more effectually done if inspecting and detective work were provided for and required in the administration of the county licensing authorized by the statute; but which, as we have seen, was not done by the legislature in the enacted statute.

The applicants for such license follow the procedure prescribed by state administrative authorities, and when a prima facie case for the issuing of a county license is thereby made out, then the county administrator directs the county court clerk to issue the license. If any violations by the licensee of the terms upon which the license was issued should occur and be of a nature to authorize a revoking or suspension of the license, then the county administrator sits in judgment when any such case is brought before him and makes his ruling under the authority conferred upon him as such county administrator. He is nowhere given the authority of a ''G-man'' to get out and personally investigate or to otherwise exercise such discovering duties. Such authority is, however, conferred upon the state authorities in supervising the administration of the act throughout the commonwealth and for the benefit of the state and discoveries so made could easily be appropriated by the county administrator in case of violations of county licenses. Quite probably, and almost certainly (tho' not so developed by this record), the city of Louisville has adopted the authority conferred by the act to itself issue local licenses within the city to retail dealers in alcoholic liquors under the authority conferred by section 15 of the act, and if done—as we have hereinbefore pointed out—the duties of the county judge of Jefferson county as county administrator becomes confined to only that part of Jefferson county outside of the city of

Louisville, and which are of the nature and character we have outlined. When viewed from that standpoint we fail to see wherein they are so onerous and burdensome as to require the imperative necessity of assistants or clerical hire in unlimited numbers and unlimited compensation (except by the constitution) if appellees' contention should be sustained, there being no restraints in such respects.

We can but feel that we would be paying slight regard to the cautionary declarations supra if we were to approve the contested appropriation in this case, since the argument in support of it fails to convince us that the implied authority contended for exists, and which conclusion is strengthened by the express provision that the county administrator shall receive no compensation. It would be out of harmony with that declaration to conclude that the same legislature intended for the county administrator to employ assistants or other employees in functioning as such, and that, they might be compensated although he was expressly forbidden to receive any. To administer the act as it applies to counties, as interpreted by the learned trial judge, and as contended for by counsel for appellees, would open wide the door for almost unlimited inroads upon the county treasury, and which would be supported by only what counsel concedes to be "necessarily implied authority," therefor. We fail to find it to exist and are compelled to reject the argument in support of it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and to render one holding the contested appropriation invalid, and for other proceedings not inconsistent with this opinion.